IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 2:22-cr-641 |
| | ) | |
| | ) | 18 U.S.C. §2 |
| vs. | ) | 18 U.S.C. § 1347 |
| | ) | 18 U.S.C. § 1349 |
| **DEANNA BURR** | ) | 18 U.S.C. § 981(a)(1(C) |
| | ) | 18 U.S.C. § 982(a)(7) |
| | ) | 28 U.S.C. § 2461(c) |
| | ) | |
| | ) | **INDICTMENT** |
| | ) | **(Under Seal)** |
| | ) | |

**THE GRAND JURY CHARGES:**

1.  The Medicare Program ("Medicare") is a federal health care program providing benefits to persons who are over the age of sixty-five and some persons under the age of sixty-five, who are blind, or disabled. Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

2.  TRICARE is a federal health care program run by the United States Department of Defense Military Health System, and it provides coverage for military beneficiaries worldwide, including active-duty service members, National Guard and Reserve members, retirees, and families. Individuals receiving healthcare benefits through TRICARE are known as TRICARE beneficiaries.

3.  Medicare and TRICARE[1] are "health care benefits programs," as defined by Title 18, United States Code, Section 24(b), in that they are public plans affecting commerce under

---

[1] TRICARE is a health benefit plan established by Congress and funded through federal appropriations provided to active and retired service members of all eight branches of the Uniformed Services and their eligible dependents. 32 CFR § 199.8 states when TRICARE

which medical benefits, items, and services are provided to individuals and under which individuals and entities who provide medical benefits, items, or services may obtain payments. In addition, Medicare and TRICARE are "Federal health care programs" as defined in Title 42, United States Code, Section 1320a-7b(f).

4. Part B of the Medicare Program is a medical insurance program that covers, among other things, certain durable medical equipment ("DME"). Specifically, Medicare Part B covers the reasonable and medically necessary services to treat the patient's illness or injury such as physician office services and physical therapy rendered by the appropriate clinician, and the ordering of DME orthotics to include knee and back braces, and cervical collars. Medicare Part B also provides coverage for orthotics management and training for upper or lower extremity(ies) and/or trunk for the initial orthotic(s) encounter.

5. Additionally, Medicare provides coverage for X-rays ordered by a clinician.

6. Medicare doesn't pay for medically unreasonable and unnecessary services and supplies to diagnose and treat a patient's condition.

7. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors. Health care providers were given and provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

---

beneficiaries receive medical coverage under Medicare, Medicare is the primary payer.

8. Medicare regulations required health care providers enrolled with Medicare to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the physician. Medicare requires complete and accurate patient medical records so that Medicare may verify that the services were provided as described on the claim form. These records were required to be sufficient to permit Medicare, through their contractors, to review the appropriateness of Medicare payments made to the health care provider.

## COUNT 1
### (Conspiracy to Commit Healthcare Fraud)

### The Conspiracy

9. From at least in or around September 2017, and continuing up to in or around January 2020, in the District of South Carolina and elsewhere, **DEANNA BURR**, and others, known and unknown, knowingly and intentionally combined, conspired, confederated, agreed, and had a tacit understanding to knowingly and willfully devised a scheme and artifice to defraud federal health care programs and to obtain by means of false and fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in violation of Title 18, United States Code, Section 1347.

10. It was the object of the conspiracy for **DEANNA BURR**, and others, known and unknown, to enrich themselves and maximize profits at the expense of the United States and patients by participating in the following scheme:

Manner and Means of the Conspiracy

The manner and means of the conspiracy operated substantially as follows and includes, but is not limited to:

11. **DEANNA BURR**, a licensed Nurse Practitioner, became a supervising clinician of Atlantic Coast Integrated Medicine ("ACIM") on or about August 2016.

12. **DEANNA BURR** became a 15% owner of ACIM on or about September 2017.

13. ACIM had protocols in place that were expanded under **DEANNA BURR**'s leadership to provide Medicare beneficiaries usually the same uniform treatment plan no matter their injury or illness.

14. When a patient first came to ACIM, they underwent an initial evaluation that consisted of head to feet musculoskeletal exam, and more than a dozen x-rays ordered by an ACIM clinician.

15. Many of the x-rays ordered were medically unnecessary and for areas of the patients' body that they did not seek treatment for including hips, shoulders, and ankles.

16. After the initial evaluation, **BURR**, and other ACIM clinicians, usually, used a standardized treatment plan for ACIM patients, including Medicare beneficiaries, that lasted 12 weeks with the expectation for the patient to receive services at ACIM three times per week.

17. The treatment plan, authorized by **BURR**, and other ACIM clinicians, consisted of chiropractic adjustments, physical therapy, injections, further diagnostic testing, and the issuing of multiple DME.

18. On the day of the initial encounter, or other says throughout the treatment plan, ACIM billed Medicare for orthotics management and training. However, the beneficiary did not receive any DME on the day it was billed and/or was not trained on any DME.

19. Usually, on the same day the treatment plan was authorized, **BURR**, and other ACIM clinicians, completed Letters of Medical Necessity (LMN) for multiple DME, including cervical collars, lumbar braces, and knee braces, to be issued to the beneficiaries throughout their treatment plan and billed to Medicare. For many ACIM patients, the DME was not medically necessary. After the LMNs were completed, the DME was rolled out throughout the 12-week standardized treatment plan.

20. Unless an ACIM patient specifically denied a certain service or DME, the beneficiary received, and Medicare was billed for, all the services in the standard treatment plan. For example, if a Medicare beneficiary presented to ACIM seeking treatment for pain in their lower back and in one of their knees, ACIM would still issue the patient and bill Medicare for a medically unnecessary cervical collar and knee braces for both knees.

21. ACIM staff and non-supervisory clinicians expressed to ACIM owners, including **DEANNA BURR**, that the services being rendered and the DME being issued to Medicare beneficiaries were unnecessary; however, **DEANNA BURR** and others continued billing Medicare for medically unnecessary DME and services.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2 - 17
### (Health Care Fraud)

22.  Paragraphs 1 through 21 are incorporated herein by references setting forth a scheme and artifice.

23.  On or about the dates listed below, in the District of South Carolina, **DEANNA BURR**, and others, known and unknown, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, as a principal, aider and abettor, and/or coparticipant in jointly undertaken criminal activity, the above-described scheme and artifice to defraud health care benefit programs affecting commerce, as defined by Title, 18 United States Code, Section 24(b), that is, Medicare and/or TRICARE, in that **DEANNA BURR,** and others, known and unknown, did knowingly, intentionally and unlawfully bill Medicare and/or TRICARE for the services listed below, for the beneficiaries listed below, knowing that the claims were false, fictitious, and fraudulent in that the services were medically unreasonable and unnecessary or not provided.

| Count | Beneficiary | Date of Service | Code | Code Description | Claim Number | Charge Amount |
|---|---|---|---|---|---|---|
| 2 | R.C. | 9/20/2017 | 97760 | training in the use of orthotics | 830217279229480 | $70 |
| 3 | R.C. | 8/31/2017 | 73600 | x-ray of shoulder, left | 830217268260010 | $85 |
| 4 | F.H. | 3/12/2018 | L1843 | knee orthosis, right | 118089709296000 | $1,400 |
| 5 | P.N. | 8/20/2018 | L0650 | lumbar-sacral orthosis | 118247842794000 | $2,360 |
| 6 | P.N. | 8/22/2018 | L0189 | cervical, multiple post collar | 118247802749000 | $475 |
| 7 | C.L. | 10/2/2018 | 73030 | x-Ray of shoulder, right | 830218288482140 | $85 |
| 8 | C.L. | 10/22/2018 | L0650 | lumbar-sacral orthosis | 118306765747000 | $2,360 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 9 | C.V. | 4/10/2019 | L1843 | knee orthosis, left | 119107762706000 | $1,400 |
| 10 | A.M. | 4/24/2019 | 73501 | x-ray of hip with pelvis view, right | 830219121327140 | $100 |
| 11 | A.M. | 5/14/2019 | L1843 | knee orthosis, left | 119143746139000 | $1,400 |
| 12 | M.K | 7/17/2019 | 97760 | training in the use of orthotics | 830219199628192 | $70 |
| 13 | M.K. | 8/5/2019 | L0180 | cervical, multiple post collar | 119227709556000 | $475 |
| 14 | P.P. | 1/30/2018 | 97760 | training in the use of orthotics | 830218054372652 | $70 |
| 15 | P.P. | 3/19/2018 | L0180 | cervical, multiple post collar | 118106793735000 | $475 |
| 16 | R.H. | 7/23/2019 | 97760 | training in the use of orthotics | 830219207430712 | $70 |
| 17 | R.H. | 8/8/2019 | L0648 | lumbar-sacral orthosis | 119226774646000[2] | $1,780 |

All in Violation of Title 18, United States Code, Sections 1347 and 2.

---

[2] TRICARE was the secondary insurance carrier for this claim and paid a portion of the claim.

## FORFEITURE

CONSPIRACY/HEALTH CARE FRAUD:

Upon conviction for violation of Title 18, United States Code, Sections 1347 and 1349 as charged in the Indictment, the Defendant, **DEANNA BURR**, shall forfeit to the United States any property, real or personal, constituting, derived from or traceable to proceeds the Defendant obtained directly or indirectly as a result of such offenses.

PROPERTY:

Pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7), and 28 U.S.C. § 2461(c), the property subject to forfeiture includes, but is not limited to, the following:

> Cash Proceeds/Forfeiture Judgment:
>
> A sum of money equal to all proceeds the Defendant obtained, directly or indirectly, from the offenses charged in this Indictment, and all interest and proceeds traceable thereto, and/or that such sum equals all property derived from or traceable to her violations of 18 U.S.C. §§ 1347 and 1349.

SUBSTITUTE ASSETS:

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant –

> (a) cannot be located upon the exercise of due diligence;
> (b) has been transferred or sold to, or deposited with, a third person;
> (c) has been placed beyond the jurisdiction of the Court;
> (d) has been substantially diminished in value; or
> (e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of the said Defendant up to the value of the above described forfeitable property;

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), and Title 28, United States Code, Section 2461(c).

A ___True___ BILL

████████████
FOREPERSON

COREY F. ELLIS
UNITED STATES ATTORNEY

By: _____/s/ AMBower_____
Amy F. Bower (Fed. ID 11784)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, SC 29401
Tel.: 843-727-4381
Fax: 843-727-4443
Email: amy.bower@usdoj.gov